417 N. Comanche St., LLC v EMRES II Tex., LLC (2025 NY Slip Op 06245)

417 N. Comanche St., LLC v EMRES II Tex., LLC

2025 NY Slip Op 06245

Decided on November 13, 2025

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: November 13, 2025

Before: Manzanet-Daniels, J.P., Moulton, Scarpulla, González, JJ. 

Index No. 651541/24|Appeal No. 5015|Case No. 2024-06794|

[*1]417 N. Comanche Street, LLC, Plaintiff-Appellant,
v
EMRES II Texas, LLC, et al., Defendants-Respondents.

McKool Smith P.C., New York (David I. Schiefelbein of counsel), and McKool Smith P.C., Austin, Tx (Charles E. Fowler of the bar of the State of Texas, admitted pro hac vice, of counsel), for appellant.
Katten Muchin Rosenman LLP, New York (Michael J. Chiusano of counsel), for respondents.

Order, Supreme Court, New York County (Anar Rathod Patel, J.), entered October 7, 2024, which granted defendants' motion to dismiss the complaint pursuant to CPLR 3211(a)(4), unanimously affirmed, without costs.
This action arises from a loan agreement obtained in 2016 by nonparty Point San Marcos Partners, L.P. (PSMP) to develop a student housing apartment complex in Texas. PSMP allegedly defaulted in June 2017, and in June 2020 the loan was accelerated by plaintiff's predecessor in interest. In October 2020 PSMP attempted to sell the property to defendant EMET Municipal Real Estate Strategy (EMET), allegedly in derogation of the loan agreement's limitations on assignment. On or about November 6, 2020, plaintiff 417 Comanche Street LLC (417 Comanche) purchased the loan and soon thereafter posted the property for a nonjudicial foreclosure sale. In December 2020, EMET assigned its rights to the purchase agreement to defendant EMRES II Texas, LLC, (EMRES) a single-purpose entity formed to close on the property. PSMP, EMET and EMRES requested that 417 Comanche withdraw the foreclosure sale and provide a payoff statement for the loan agreement. 417 Comanche complied, but the parties were unable to close the sale and/or pay off the loan. 417 Comanche then reposted the property for foreclosure.
Litigation in Texas ensued.
In the initial Texas action, PSMP obtained preliminary injunctive relief blocking the foreclosure sale on the ground that 417 Comanche had stated a payout amount improperly inflated by a default interest rate specified in the loan agreement. Before that injunction expired in April 2021, EMRES brought a second action in Texas in March 2021, alleging that 417 Comanche had tortiously interfered with its purchase of the property — again, by applying a default interest rate that improperly enhanced the loan payout amount. EMRES obtained preliminary relief blocking the foreclosure sale.
The court ordered that EMRES post a bond in the amount of $500,000. In a third Texas action, 417 Comanche and PSMP litigated whether 417 Comanche was entitled to charge the default interest rate under the terms of the loan agreement. An intermediate appellate court in Texas ultimately decided that issue in 417 Comanche's favor, and further appeal of the decision to the Supreme Court of Texas was denied in September 2025.
In February 2024, after obtaining the favorable appellate ruling on the default interest rate, 417 Comanche asserted a counterclaim in the EMRES action, asserting that EMRES had wrongfully obtained the injunction in that action. In this counterclaim, styled a "suit on bond/wrongful injunction," 417 Comanche asserted that the injunction was wrongful from its inception because it rested on the faulty premise that 417 Comanche had improperly charged the default interest rate. When it filed the counterclaim, 417 Comanche also moved to dissolve the injunction. By order dated April 24, 2024, the Texas court denied the motion but increased the bond to $3 million.
Comanche brought this New York action in March 2024 against EMRES and several individuals and entities associated with EMRES. Asserting tortious interference with contract as the sole cause of action, the complaint avers that the injunction prevented 417 Comanche from exercising its foreclosure rights under the loan agreement.1 Defendants moved to dismiss the complaint pursuant to CPLR 3211 on three grounds: 1) another action pending, 2) statute of limitations, and 3) failure to state a claim. Supreme Court granted the motion on the first ground, finding that this action was duplicative of the counterclaim asserted by 417 Comanche against EMRES in Texas. Supreme Court did not reach the remaining two grounds for dismissal. While the motion to dismiss was pending in Supreme Court, the Texas court granted 417 Comanche's summary judgment motion to the extent of dismissing EMRES tortious interference claim. On October 15, 2024, eight days after Supreme Court dismissed this action, the Texas court lifted the injunction. On appeal, 417 Comanche treats this development as essentially nullifying Supreme Court's decision, as the injunction has been lifted. However, 417 Comanche's counterclaim has not yet been decided by the 1 417 Comanche also bases its tortious interference claim on EMET's conduct in inducing PSMP to breach the loan agreement by entering into the sale agreement without obtaining the lender's prior written consent. In its appellate briefing, however, 417 Comanche states that the injunction is at the "center" of its case and its alleged damages mostly appear to flow from the injunction. Texas Court. While the lifting of the injunction is one element of the counterclaim, under Texas law 417 Comanche must also show that the injunction was improperly issued or perpetuated (see DeSantis v Wackenhut Corp., 793 SW2d 670, 685-686 [Tex 1990], cert denied 498 US 1048 [1991]).
The motion court properly exercised its discretion in dismissing the complaint on the ground of another action pending (see CPLR 3211[a][4]). In considering dismissal pursuant to CPLR 3211(a)(4), courts evaluate: (1) whether there is sufficient identity of the parties; (2) whether both actions arise out of the same transaction, and whether the factual allegations are sufficiently similar; and (3) whether the same recovery is sought (see Syncora Guar. Inc. v J.P. Morgan Sec. LLC, 110 AD3d 87, 96 [1st Dept 2013]). Courts weigh these factors while also considering the interests of judicial economy and comity and the avoidance of inconsistent judgments (see White Light Prods. v On The Scene Prods., 231 AD2d 90, 96-97 [1st Dept 1997]). "New York courts generally follow the so-called first-in-time rule, which provides the court which has first taken jurisdiction is the one in which the matter should be determined and it is a violation of the rules of comity to interfere" (Syncora, 110 AD3d at 95 [internal quotation marks omitted]). However, "determining the priority of pending actions by dates of filing is a general rule that should not be applied in a mechanical way" (L-3 Communications Corp. v SafeNet, Inc., 45 AD3d 1, 7 [1st Dept 2007] [internal quotation marks omitted]).
In weighing the relevant factors here, there is sufficient identity of the parties, and sufficiently similar factual allegations (see Syncora, 110 AD3d at 96). Plaintiff and EMRES are named parties and adversaries of each other in this action and the relevant Texas action. The fact that there are additional defendants besides EMRES in this action does not preclude dismissal under CPLR 3211(a)(4) where the parties are affiliated with each other and the other elements of CPLR 3211(a)(4) are present (see Syncora, 110 AD3d at 96).
As to the claims, 417 Comanche's wrongful injunction counterclaim in the Texas action and the tortious interference with contract claim in this action arise from the same series of alleged wrongs (id.; see also GMF 157 LP v Inspirit Dev. & Constr., LLC, 235 AD3d 493, 494 [1st Dept 2025]). 417 Comanche argues that the recovery sought in the two actions is dissimilar, in that the damages alleged in this action exceed those it could recover in the Texas action, where it is limited to recovery on the bond. However, except for conclusory statements about not being able to obtain personal jurisdiction in Texas over some of the additional defendants named herein, 417 Comanche does not explain why it could not have brought counterclaims based on other causes of action in Texas that would have allowed it to recover damages above and beyond the $3 million bond. Certainly, the relief sought in the two actions is not antagonistic or inconsistent and would not serve different purposes (see White Light Prods., 231 AD2d at 94). In both cases, the relief sought would primarily compensate 417 Comanche for damages it incurred as a result of being unable to foreclose on the property due to the existence of the injunction.
Any discrepancy in the amount of damages sought in the two actions is in any event overcome by interests of judicial economy, comity, and avoidance of inconsistent judgments (see White Light Prods., 231 AD2d at 96). 417 Comanche argues that because the injunction was dissolved, the motion court no longer needs to opine on its propriety. However, it ignores the fact that its counterclaim is still pending. In deciding the tortious interference with contract claim raised in this action, the motion court would have to opine or analyze issues that are also before the Texas court, particularly whether EMRES improperly obtained and/or perpetuated the bond, causing 417 Comanche's damages. Thus, the danger of inconsistent results remains.
For these reasons, dismissal of the complaint pursuant CPLR 3211(a)(4) was a provident exercise of discretion, and the dissolution of the injunction in Texas does not mandate reinstating the New York complaint.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: November 13, 2025